# W. W. PARSONS, Appellant, v. HARRY E. HARVEY.

Division Two, March 13, 1920.

1. **EVIDENCE: Former Pleading.** An answer, abandoned by the filing of an amended one, may be offered in evidence by plaintiff as an admission on defendant's part.

2. **WIDOWER'S SHARE: Note to Deceased Wife: Estoppel.** When the appointment of an administrator upon a deceased wife's estate is legally dispensed with, a note for $500 payable to her, being her sole property, becomes the absolute property of her husband as her widower; it could not have been given away by her, nor willed away, nor taken by her creditors. If its payment is to be avoided in a suit thereon by her widower, the maker must either establish payment prior to her death, or plead and establish such an application, with the husband's acquiescence, of an equal amount of money after her death, as amounts to an estoppel, such as the payment of her funeral expenses.

3. **EVIDENCE: One Party Dead: Denial of Other Testimony.** In a suit on a note given by defendant to his deceased mother, defendant is a competent witness to deny conversations occurring after her death to which plaintiff's witnesses have testified, but he is not a competent witness to deny that a conversation took place between him and her wherein he agreed to pay her funeral expenses in addition to the amount of the note.

4. **CONSTITUTIONAL LAW: Sec. 10, R. S. 1909; Orders Made in Vacation.** Section 10, Revised Statutes 1909, authorizing the probate court, or judge thereof, in vacation, to refuse to grant letters of administration on estates of deceased persons not greater in amount than is allowed by law as the absolute property of the widower, widow or minor children, is not violative of any provision of the Constitution. It gives to creditors and other interested parties opportunity to challenge the order by timely action in court; and, besides, the action of the court is not in strict sense judicial, but the statute is similar to many others

enacted for the public convenience and to simplify the business before such courts, at a minimum cost, without injury to any one.

Appeal from Schuyler Circuit Court.—*Hon. N. M. Pettingill,* Judge.

REVERSED AND REMANDED (*with directions*).

*Fogle & Fogle* for appellant.

(1) This note upon the death of Mary E. Parsons, on compliance with the law, became the absolute property of W. W. Parsons, but the title thereto passed to her legal representative. It could not be willed away, given away, or taken by her creditors or for Mrs. Parsons' debts. Glenn v. Dunn, 88 Mo. App. 442; Barnum v. Barnum, 119 Mo. App. 66; Lowe v. Lowe's Executors, 163 Mo. App. 213; Nelson v. Troll, 173 Mo. App. 51. (2) The proceeds of the note could not be taken to pay the expenses of the administration of Mary E. Parsons, because it was the absolute property of W. W. Parsons upon her death if he exercised his right in due time. State v. Johnson, 177 Mo. App. 584; Lamar's Admr. v. Belcher's Exr., 154 Mo. App. 171. (3) The widow or widower may make his or her election of the property from the legal representative of the estate at any time before the same is paid out or distributed or have the estate discharged from administration. Drowry v. Baur, 68 Mo. 155; Cummings v. Cummings, 51 Mo. 261; In re Estate of Howard, 128 Mo. App. 482; Hill v. Evans, 114 Mo. App. 715; Lamar v. Belcher, 151 Mo. App. 571; Secs. 114, 115, 116, 117, 118, 119, 120, 10, R. S. 1909; Nelson v. Troll, 173 Mo. App. 51. (4) If there were any arrangements between Harry Harvey and his mother that he should take the note after her death and pay each of her children his or her part or keep himself his part or pay funeral expenses or any other arrangement, such arrangements were absolutely void, as testamentary in character. Kyl v. Westerhaus, 42 Mo. App. 49; Tye v. Tye, 88 Mo. App.

330; Tygard v. McComb, 54 Mo. App. 85. (5) By operation of law and the order of the probate court, W. W. Parsons in this case became the absolute owner of said note and entitled to immediate possession thereof with the authority to sue for, and collect the same or the value thereof as provided by Sec. 10, R. S. 1909. McMillan v. Wacker, 57 Mo. App. 220; Perkins v. Goddin, 111 Mo. App. 438. (6) Defendant was guilty of conversion of said note when he took the same from the trunk in the way as shown by the evidence. Wilkinson v. Misner, 158 Mo. 551. (7) On the trial of this cause W. W. Parsons was vested with all the rights of an administrator, hence the defendant was incompetent as a witness to testify to any facts that occurred before the refusal of administration. Sec. 10, R. S. 1909; Myers v. Manlove, 101 N. E. 661; Kersey v. O'Day, 173 Mo. 560. (8) Mary E. Parsons, the payee in the note, was dead at the time of this trial. The note was the cause of action in issue and on trial. Harvey was the maker and payor of said note and the defendant in the case. The answer of the defendant pleaded payment, hence Harvey was incompetent to testify to any facts pertaining to the note or conversation concerning it or to any circumstance when it was called in controversy. Secs. 63-54, R. S. 1909; Weiland v. Wayland, 64 Mo. 168; Bishop v. Briton, 229 Mo. 73; Angell v. Hisler, 64 Mo. 142; Powell v. Bosard, 79 Mo. App. 672; Hisaw v. Sigler, 68 Mo. 449; Litner v. Gregg, 61 Mo. 449; Leavea v. Southern Ry. Co., 171 Mo. App. 24; Leavea v. Southern Ry. Co., 266 Mo. 151. (9) Abandoned pleadings are competent evidence against the party making them. The statements, allegations, etc., may be used against the party making them and sometimes may be used to show afterthought or a new creation, and the court erred in excluding defendant's abandoned pleading offered by the plaintiff in evidence. Walser v. Wear, 141 Mo. 463; Edison v. Railroad, 248 Mo. 415.

*Higbee & Mills* for respondent.

(1) There was no conversion of the note. Plaintiff was present, heard and saw his daughter give it to defendant; made no objection. He knew of the arrangement of his wife and this defendant as to the manner in which said note was to be paid. He stood by and permitted defendant to finish payment of said note in said manner; allowed him to defray funeral expenses, erect a monument, pay doctor's bill, etc., as payments on the note, which plaintiff alone was otherwise bound to pay. Doyle v. Burns, 99 N. W. 204; 38 Cyc. 2009. (2) Sec. 10, R. S. 1909, is unconstitutional in so far as it seeks to confer judicial powers upon a probate judge in vacation. In re Letcher, 190 S. W. 19; State ex rel. v. Locker, 266 Mo. 384; State ex rel. v. Woodson, 161 Mo. 454; Carter v. Carter, 237 Mo. 633. Unless letters have been properly dispensed with and the title to the note in suit properly passed to plaintiff he has no standing in court; plaintiff's demurrer should have been sustained. McMillan v. Wackes, 57 Mo. App. 220; Perkins v. Goodwin, 111 Mo. App. 429. (3) Plaintiff is not an administrator and is not suing in that capacity. He claims that the note has been transferred to him, and that administration has been dispensed with. Hence the competency of defendant as a witness is not a question arising under Section 6354, R. S. 1909. Appellant's argument would perpetually incapacitate defendant as a witness in a cause wherein the estate of the deceased was not interested. The issue here is, Did the defendant convert the note after his mother's death? On this issue he is a competent witness. Weiermueller v. Scullin, 203 Mo. 466.

RAILEY, C.—This case was appealed by plaintiff to the Kansas City Court of Appeals. and certified by the latter to this court, on account of a constitutional question raised therein. We have read the record. the briefs of counsel, and the opinion of the Court of Appeals, certifying the case here. Subject to the con-

clusion which we may hereafter reach, in respect to the constitutional question involved, we are satisfied with the opinion of the Court of Appeals, and hereby adopt the same as expressive of the views of this court, in respect to the matters considered therein.

I.  The above opinion, without caption, reads - as follows:

"It is somewhat difficult to determine whether plaintiff's petition is a suit to recover possession of a promissory note alleged to have been taken by defendant and converted to his own use, or whether it is a suit to recover the amount due on said note with the other facts alleged to show why the note sued on was not filed with the petition.  In view of the fact that the petition prays for judgment for the amount of the note with interest and that the issue tried by both sides was whether the note was paid, we might regard it as a suit on the note. However, it need not be decided here what the suit is.

Contract for Widower's Share.

"Plaintiff is the step-father of defendant.  The latter's mother, by her first husband, had four children, and by her last husband, the plaintiff, she had two, but only one of these survived her, the other dying without issue.  Prior to May 24, 1904, Mrs. Parsons owned a 40-acre farm of unimproved brush land.  On that day she and her husband deeded said land to the defendant, reserving the right to the possession of said land as long as they desired to live thereon, together with the rents and profits thereof during their occupancy; and if the husband, W. W. Parsons, should survive his wife he was not to have any further interest in or right to the possession of said land.  Said deed recited a consideration of $1036, and on the same day defendant executed a mortgage on the land securing a note to Mrs. Parsons for $750, due in five years, with four per cent interest, representing the unpaid purchase price of said land.  On January 6, 1912, this note was taken up and a new note given, but this time it was for $500, due five

27—281 Mo.

years after date, bearing six per cent compound interest per annum from date until paid. This note was not secured, no mortgage being given therefor, and the old mortgage was released of record on January 8, 1912. It is this $500 note that is involved herein.

"From the time said $500-note was given, up to Mrs. Parsons' death on April 7, 1913, she kept it in her trunk. Upon the arrival of defendant at his mother's home after her death and before her burial, this note was turned over to him by plaintiff's daughter, defendant's half sister, in the presence of plaintiff, who made no objection. Defendant says it was turned over to him voluntarily and without request on his part, but his half sister, who was plaintiff's witness, testified that he demanded the note and when he received it he said, 'Part of this note belongs to you folks.'

"Plaintiff, as widower, under Section 10, Revised Statutes 1909, obtained an order from the probate judge, in vacation, dispensing with administration on his wife's estate on the ground that she left no property greater in amount than that allowed by law to the widower as his absolute property, and authorizing said widower to sue for, collect and retain said property. No order of the probate court approving this vacation order was obtained. After getting said vacation order, said widower brought this suit, either to collect said note or for its conversion, as herein above stated.

"The evidence in plaintiff's behalf tended to show that at the time the $750-note was taken up and the $500-note given in lieu thereof, the agreement between defendant and his mother was that he should reserve $250 to pay for her funeral expenses and would, after that, pay the $500-note by giving to each of her five children the sum of $100.

"Defendant's claim is that the agreement was that he was to furnish money for her support from time to time as she might need it, and upon her death he was to take her body back to her old home in Iowa and bury it by the side of her first husband, pay all funeral expenses and erect a monument for both, all out of the

$500-note; that from time to time he sent her money to live on, and upon her death he took her body back to Iowa and there buried it, paid all funeral expenses and erected a monument at an expense of $110, and that in this way the $500-note was paid in full.

"While there was evidence tending to show that defendant did send money to his mother at various times, yet it is not clear when this was done. For aught that appears, a large portion of these amounts may have been sent to her before the $500-note was given, and this may have been the reason why the note was reduced from $750 to $500, said payments accounting for the $250 difference. Defendant's mother lived only a little over a year after the $500-note was given, and it is not at all clear that the small sums sent from time to time, during that period, or indeed at any time, amounted to $500. Indeed, it would seem that they did not, since it is shown by the evidence offered in defendant's behalf that after all such payments for his mother's support and for her funeral and monument had been made, he paid one of his mother's heirs, his full sister, $100 as her part of the note. It is difficult to see why he should have made such distribution to his mother's heir if the amounts he had paid out had equalled said note as he now claims. In addition to this, his half sister testified that he told her he owed her $100, but would not pay it, as she owed that much rent on the place since his mother died. He admitted telling her he owed her $100, but was not allowed to give the entire conversation.

"Defendant first filed an answer in which he set up that he had paid his mother's funeral bills, at plaintiff's request, amounting to $114.50, and that plaintiff owed defendant $100 as rent for the place he had occupied since his wife's death; but defendant afterwards filed an amended answer, setting up that by supporting his mother and paying her funeral bills and $110 for a monument he had paid said note. The original answer was offered in evidence by plaintiff, but was excluded

by the court. We think it should have been admitted for whatever it was worth as an admission.

"Whatever was still due on the note at Mrs. Parsons' death would pass to her legal representatives the moment one was appointed, and, if the appointment of one was legally dispensed with, then said note became the absolute property of her husband as widower. It could not be given away by her, or willed away, nor taken by her creditors. [Sec. 120, R. S. 1909.; Glenn v. Gunn, 88 Mo. App. 442; Nelson v. Troll, 173 Mo. App. 51.] Doubtless, if plaintiff stood by and allowed defendant to pay out money for funeral expenses and for a monument upon the idea that such agreement with his mother was valid, plaintiff would be estopped. But there was no plea of estoppel in this case, nor does it appear that plaintiff knew or consented that defendant should expend money for a monument.

"While defendant may have been a competent witness to deny conversations testified to by plaintiff's witnesses as having occurred after Mrs. Parsons' death (Weiermueller v. Scullin, 203 Mo. 466), still he was not a competent witness to deny that a conversation took place between him and his mother wherein the agreement was that he was to pay the funeral expenses out of the $250 which represented the difference between the $750-note and the $500-note. That was testifying in regard to the contract between him and his mother. It was the contract in issue and on trial and the opposite party to that contract was dead. Plaintiff had from the first objected to his competency, and upon his denial of such conversation, moved to strike out the evidence as incompetent, but the objection was overruled, and exceptions were saved.

"It is apparent from the foregoing that appellant is entitled to a reversal and remanding of the case unless a contention made by the defendant, which we have not mentioned until now, must be upheld.

"That contention is that the mere order of the probate judge made in vacation, and without any order of the court approving or confirming it, is wholly insuffi-

cient to dispense with administration and vest .title to the note in plaintiff as Mrs. Parsons' widower. Consequently, defendant says that neither plaintiff's petition nor his evidence shows any cause of action in him. This contention is based upon the claim that Section 10, Revised Statutes 1909, which authorizes the probate judge *in vacation* to make such order, is, to that extent, unconstitutional, in that it is in conflict with Sections 1 and 34 of Article 6 of the Constitution. This claim of unconstitutionality was asserted from the first, being clearly and specifically set up in the answer filed and preserved throughout the case.

"We are, therefore, unable to decide the case without either ignoring this point or else passing upon it one way or the other. The jurisdiction to decide the constitutionality of the section, however, lies with the Supreme Court, and not with us. Hence it is our duty to order the case transferred to that court, which is accordingly done. All concur."

II. It is contended by appellant that the order of the probate judge in vacation, without any order of the probate court approving or confirming it, is sufficient to dispense with administration, and to vest title to the note in controversy in plaintiff as Mrs. Parsons' widower. Defendant accordingly asserts that neither plaintiff's petition, nor his evidence, show any cause of action in him. The above contention is based upon the idea that Section 10, Revised Statutes 1909, which authorizes the probate judge in vacation to make such an order, is, to that extent, unconstitutional, in that it is in conflict with Sections 1 and 34 of Article 6, of the Constitution.

*Order in Vacation.*

Sections 1 and 34 of Article 6 of the Constitution, relied on by appellant, read as follows:

"Sec. I The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts."

"Sec. 34. The General Assembly shall establish in every county a probate court, which shall be a court of record, and consist of one judge, who shall be elected. Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians and the sale or leasing of lands by administrators, curators and guardians; and also jurisdiction over all matters relating to apprentices; *Provided,* That until the General Assembly shall provide by law for a uniform system of probate courts, the jurisdiction of probate courts heretofore established shall remain as now provided by law."

Section 35 of said Article 6 reads as follows:

"Probate courts shall be uniform in their organization, jurisdiction, duties and practice, except that a separate clerk may be provided for, or the judge may be required to act, *ex officio,* as his own clerk."

In addition to above Sections 1 and 34 of Article 6, we are cited by appellant, in support of his contention that Section 10, Revised Statutes 1909, is unconstitutional, to the following authorities: State ex rel. v. Locker, 266 Mo. 384; State ex rel. v. Woodson, 161 Mo. l. c. 454; In re Letcher, 190 S. W. 19.

In the last named case, Court in Banc was called upon to construe Sections 10409, 10412 and 10413, Revised Statutes 1909. These three sections read as follows:

"Sec. 10409. If any person whose office has become vacated, or his executors or administrators, shall fail to deliver any record, book or paper to the person entitled to the same, any judge of the Supreme or Circuit Court, upon the affidavit of any credible person, setting forth the facts, may issue his warrant, directed to the sheriff, marshal or coroner, commanding him to seize all the records, books and papers appertaining to such office, and deliver them to the proper officer named in such warrant.

"Sec. 10412. Any person aggrieved by any such warrant may apply to any judge of the Supreme or Circuit Court, who, upon affidavit of the applicant that injustice has been done or is about to be done by such warrant, shall issue a citation to all persons interested, commanding them to appear before him at a place and time named in the citation, which shall be served by the sheriff, marshal or coroner.

"Sec. 10413. The judge may enforce obedience to such citation by attachment, and shall proceed in a summary manner and determine the matter according to right and justice, and may issue his warrant for the restoration of any record, book or paper found to have been improperly seized."

Judge FARIS, speaking for Court in Banc, on page 21, said:

"Even a casual examination of the statutes under which the initial proceeding herein was brought (Article 1 of Chapter 101, R. S. 1909) shows that it is contemplated that a hearing may be had thereunder to determine the right of possession of the records claimed in the affidavit. Indeed, it is patent that any scheme or so-called procedure which (upon an order issued pursuant to an *ex parte* affidavit) would permit one person to take from another any article, or record, or property, arbitrarily, without any hearing, or day in court, or without affording any opportunity to be heard, would be to take the property of another without due process of law. [Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215.] In short, unless we construe the statutes in question as contemplating among their provisions the affording of an opportunity for a hearing of the disputed question of the right of possession of the records so arbitrarily taken, then the whole scheme is utterly void. To uphold these statutes at all, we must contrue Sections 10412 and 10413 as permitting a hearing to one from whose possession records are arbitrarily taken by order of the court, or judge who issues such 'warrant.' In such a hearing, wherein the court or judge is required to 'determine the matter according to right and justice'

(Section 10413, R. S. 1909), such officer or tribunal acts judicially, otherwise he could not act at all.''

On page 22, Judge FARIS further observed:

''It follows, we think, that Sections 10409, 10412, and 10413, Revised Statutes 1909, so far as they purport to give this court, or a judge thereof, original jurisdiction to issue the order therein provided for and to hear and determine the disputed right to the possession of books and records, according to right and justice, are void because not within constitutional delimitations.''

The facts in above case, as well as the holding of the court in reference thereto, clearly distinguish it from the matter now before us.

In State ex rel. v. Locker, 266 Mo. 384 and following, the question before Court in Banc was whether the probate courts of this State, by virtue of Sections 2441-2, are authorized to issue writs of *habeas corpus*. Judge GRAVES, speaking for said court, on page 392, held that they were not authorized by the provisions of our Constitution to issue such writs. The question now before us was neither considered nor discussed.

In State ex rel. v. Woodson, 161 Mo. l. c. 446-7, a judge of the circuit court, in vacation, at the instance of the Supervisor of Building & Loan Association, in winding up its affairs, examined the matters presented for his consideration, and made the following order in reference to the subject: ''It is therefore ordered that said building and loan association be dissolved, and the officers, agents, and employees of said association are hereby enjoined from further conducting the business of said association,'' etc. Judge VALLIANT, speaking for Court in Banc, on pages 454-5, said:

''*It is contended, that our Statutes confer on the Judge the authority to hear and determine the whole issues in a case of this kind in vacation.* If there is such a statute, it is in violation of Section 1, Article 6, of our Constitution, above quoted. In that section the Constitution disposes of all the judicial power of the State in matters of law and equity, and it leaves nothing to be disposed of by the General Assembly. This is the view

the Supreme Court of Michigan took of the same subject. That court said: 'By Article 6, Section 1, of our Constitution, the judicial power is vested in one supreme court, in circuit courts, in probate courts, and in justices of the peace. . . Section 2 of this act confers upon the judge in vacation the authority to hear and determine summarily upon the questions of the insolvency of the debtor; the giving or attempting to give preferences; his refusal or neglect to make assignment of his property; and his orders and judgment (if he makes any) are final and conclusive. . . . A statute which confers such judicial powers upon a circuit judge at chambers is clearly in conflict with Article 6, Section 1, of the Constitution.' [Risser v. Hoyt, 53 Mich. 185.]

*"What is here said is in reference to judicial power in its strict sense. There are quasi-judicial powers conferred upon quasi-judicial bodies, and powers to do certain acts in vacation, judicial in character, but subsidiary to a suit pending or about to be instituted in court, are conferred on judges of courts;* but the power to try issues in a suit at law or in equity, and pronounce judgment or decree upon the facts found or confessed, can be conferred, under our Constitution, only on a fully organized court." (Italics ours).

In the above case, the order made by the trial judge in vacation, indicates that he attempted to try the *cause*, as he would have done had all the proceedings taken place during the *regular* term of court. The suggestions made by Judge VALLIANT, italicised as above, clearly indicate that his views of the law are not in accord with appellant's, based upon the facts before us.

Section 10, Revised Statutes 1909, the constitutionality of which is challenged by appellant, reads as follows:

"The probate court, or the judge thereof in vacation, in its or his discretion, may refuse to grant letters of administration on estates of deceased persons not greater in amount than is allowed by law as the absolute property of the widower, widow or minor children under the age of sixteen years. Proof may be allowed by or on behalf

of such widower, widow or minor children before the probate court or judge thereof of the value and nature of such estate, and if such court or judge shall be satisfied that no estate will be left after allowing to the widower, widow or minor children their absolute property, he or it shall order that no letters of administration shall be issued on such estate, unless, on the application of creditors or other parties interested, the existence of other or further property be shown. And after the making of such order, and until such time as the same may be revoked, such widower, widow or minor children shall be authorized to collect, sue for and retain all the property belonging to such estate; if a widower or widow, in the same manner and with the same effect as if he or she had been appointed and qualified as executor or executrix of such estate; if minor children under the age of sixteen years, in the same manner and with the same effect as now provided by law for proceedings in court by infants in bringing suits.''

The order made by the probate judge in vacation, is couched in the following language:

"Now at this day comes William W. Parsons, *and shows to the court* that he is the widower of Mary F. Parsons, late of the county of Schuyler, deceased, who died, having at the time of her death personal property in this State, not greater in amount than is allowed by law as the absolute property of the widower.

"To the end, therefore, that the said William W. Parsons, as such widower, may be authorized and empowered to collect, sue for and retain said property, as his absolute property, as provided by law, it is ordered that letters of administration on said estate be refused, unless on the application of creditors or other parties interested, the existence of further or other property be shown.'' (Italics ours.)

Other sections of the Administration and Guardian laws of this State have been enacted for the benefit and convenience of the public, which are similar in principle

to Section 10, supra, some of which are as follows: Sections 9, 29, 404, 424, 547, Revised Statutes 1909.

It is manifest that Section 34 of Article 6 of our Constitution confers upon probate courts complete jurisdiction over all matters pertaining to probate business. There is nothing in our Constitution which forbids the General Assembly from passing practical and common-sense statutes, like Section 10, supra, which facilitate the transaction and convenience of public business, at a minimum expense, and that, too, without doing an injury to creditors and other persons, whose rights may still be asserted before the court. The judge in the case at bar, disposed of the question before him, just as he would have done, had the matter been presented during term time. The order made was not final, and appellant, if he had seen fit to do so, might have challenged the action of the judge, by taking timely steps before the court. These statutes are enacted because of their public convenience. They simplify the business before such courts, at a minimum cost, and without injury to anyone. Our court has, from time to time, sustained laws, which authorized a judge or judges to perform some duty enjoined upon him by the General Assembly. [State ex rel. Lionberger v. Tolle, 71 Mo. l. c. 648; State ex rel. O'Malley v. Lesueur, 103 Mo. l. c. 262-3; State v. Hathaway, 115 Mo. l. c. 49; State ex rel. v. Higgins, 125 Mo. l. c. 368; St. Joseph v. Truckenmiller, 183 Mo. 9; State ex rel. v. Andrae, 216 Mo. l. c. 629; State ex rel. v. Bird, 253 Mo. l. c. 579; State ex rel. v. Tincher, 258 Mo. l. c. 19; Johnson v. Railroad, 259 Mo. l. c. 544; School District v. School District, 181 Mo. App. l. c. 592; 7. R. C. L. sec. 2, p. 973; 7 R. C. L. secs. 6 and 7, pp. 777-8; 15 R. C. L. sec. 12, p. 522.]

In State v. Hathaway, 115 Mo. l. c. 49, in discussing a similar question, Judge GANTT, among other things, said:

"As was said by the Supreme Court of Indiana in Wilkins v. State, 16 N. E. Rep. 192, upon this identical point: 'If the appellant were correct in his assumption, then every school examiner who examines an applicant for

license, every clerk who accepts and acts upon affidavit, every auditor who accepts an abstract of title when he loans school funds, and every officer who· approves a report, would exercise judicial functions. *That they do, in some degree, act. judicially, is true,* and do does every officer from the governor to constable, who is invested with discretionary powers; . . . but no one of these officers exercises judicial judgment in the sense that a *court* or a *judge* does. These officers, one and all, are ministerial officers and not judges or courts; and the judicial functions meant by the Constitution *are such only as courts or judges exercise.'*

"A judicial duty within the meaning of the Constitution is such a duty as legitimately pertains to an officer in the department designated by the Constitution as judicial. And we can but commend in this connection the language of the same court in Flournoy v. City, 17 Ind. 169: 'An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act.' This rule is one quite familiar in this State. It is one that governs sheriffs and constables in making levies and has been applied to the Secretary of the State in determining the sufficiency of a certificate under the election law. State ex rel. v. Lesueur, 103 Mo. 253.''

In State ex rel. v. Higgins, 125 Mo. l. c. 368, Judge Black, speaking for the court, said:

"As said in People ex rel. v. Provines, 34 Cal. 520, l. c. 540, *where a like provision was under consideration*: 'There is nothing in the third article of the Constitution which prohibits a judicial officer from exercising functions, not in their nature judicial, if they do not belong to either the legislative or executive departments, as they are defined and limited in the Constitution.' " (Italics ours.)

In State ex rel. v. Andrae, 216 Mo. l. c. 629, Judge Graves, in discussing this subject, said:

"The 'judicial powers' referred to in the Constitution are those 'as to matters of law and equity.' This

means such powers and authority as courts and judges exercise; such as legitimately pertain to an officer in the department designated by the Constitution as judicial; such as are exercised in the ordinary forms of a court of justice, in a suit between parties, with process. It does not include every authority judicial in its nature which requires the exercise of judgment or discretion. [State v. Hathaway, 115 Mo. 36, 48, 49, and cases cited.]''

In State ex rel. v. Bird, 253 Mo. 1. c. 579, Judge Brown, speaking for Court in Banc, said:

"By Sections 34 and 35, Article 6, of our Constitution, it is further provided that the General Assembly shall create probate courts with uniform jurisdiction and duties; so that the Legislature was undoubtedly authorized to vest in said courts such additional powers not named in the Constitution as it deemed proper."

In State ex rel. v. Tincher, 258 Mo. 1. c. 19, Judge Walker, speaking for Court in Banc, said:

"Despite the constitutional provision, therefore, in regard to jurisdiction and the evident purpose in view in the establishment of probate courts, it is no longer an open question here as to the right of the Legislature to add to the powers of such courts."

In Johnson v. Railroad, 259 Mo. 1. c. 544, Judge Graves, after quoting from the Woodson case, supra, among other things, said:

"In other words, the judicial power referred to in the constitutional provision, supra, has reference to the actual and real trial and determination of 'matters of law and equity' and not to mere preliminary steps necessary to be taken for the institution of the suit in law or equity. In our judgment the statute does not violate the Constitution, and this point is ruled against the defendant."

We do not deem it necessary to quote further from these authorities. They sustain the right of the Legislature to pass such laws, for the convenience of the public. We are of the opinion that Section 10, Revised Statutes 1909, is not obnoxious to the criticism leveled against

it by appellant, nor does it conflict with either Sections. 1 or 34 of Article 6 of our Constitution.

In view of the foregoing, we reverse and remand the cause with directions to the trial court to proceed with same in accordance with the views heretofore expressed.

*White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.