STATE EX REL. MACKEY, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 2,812.)

(Submitted January 17, 1910.   Decided January 29, 1910.)

[106 Pac. 1098.]

*District Courts—Jurisdiction—Nonresidents—General Appearance—What Constitutes—Prohibition.*

General Appearance—What Constitutes.
   1. Where defendants, after a denial of their motion to dismiss the action, asked for and were granted time in which to answer to the merits, their request for time constituted a general appearance, the effect and scope of which could not be limited by a statement of counsel that he desired the record to show that his appearance was special.

Courts—Jurisdiction—Extent.
   2. The jurisdiction of the courts of a state is coextensive with its sovereignty, which is limited only by the territory of the state, and attaches to all property and persons within the limits thereof.

District Courts—Jurisdiction—Nonresidents—Prohibition.
   3. All the parties to an action on a promissory note, executed and payable in a sister state, were nonresidents of Montana. Money belonging to one of defendants, in the hands of a third party in this state, having been attached, and a motion to release same from levy as well as one to dismiss the action having been denied, such defendant made application for writ of prohibition, on the ground that the district court had not jurisdiction to try the cause. *Held,* that that court was clothed with jurisdiction over the subject matter of the action, notwithstanding both plaintiff and defendants were residents of, and the note was payable in, another state; and that, having acquired jurisdiction over the persons of defendants by their voluntary general appearance, as set forth in paragraph 1 above, it had power to proceed and try the cause.

ORIGINAL application for prohibition, by the state, on the relation of William T. Mackey, against the district court of the fifth judicial district and the judges thereof.   Application dismissed.

In behalf of Relator there was a brief by *Mr. C. R. Stranahan,* and Messrs. *Wm. D.* and *James E. Fenton,* and oral argument by *Mr. Stranahan.*

*Mr. George F. Cowan* submitted a brief in behalf of Respondents, and argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an application for a writ to prohibit the district court of Jefferson county and the judges thereof from further proceeding in the case of *Lillie P. Lemcke* v. *G. F. McConnell, A. B. Widney, and W. T. Mackey,* the latter being the relator here, now pending in the court aforesaid.

It appears from the petition of the relator that on or about the first day of October, 1908, the plaintiff in the cause referred to, a resident of Seattle, Washington, filed her complaint, wherein she sought to recover from the defendants the sum of $3,879.96, together with interest and $450 attorney's fees, besides costs, alleged to be due on four certain promissory notes given by the defendants to one G. C. Lemcke, and sold and assigned to the plaintiff. The notes were executed at Portland, Oregon, and were payable in that city. Summons was regularly issued from the clerk's office in Jefferson county and returned unserved, for the reason, as shown by the return of the sheriff, that he was unable to find any of the defendants in the county. On December 10, 1908, plaintiff's attorney filed with the clerk a demand that an *alias* summons be issued, and the clerk complied with the demand by issuing a so-called *alias* summons, containing, in addition to the contents of the original summons, a short statement of the nature of the action. (See Revised Codes, sec. 6522.) This statement also contained a notice that the plaintiff claimed "a reasonable attorney's fee." The *alias* summons was filed in the clerk's office on the day of its issuance. Thereupon Mr. Cowan, attorney for the plaintiff, filed an affidavit setting forth, among other things, that all of the defendants were nonresidents of the state of Montana, giving the residence of McConnell as at Seattle, Washington, and of Widney and Mackey as Portland, Oregon, and stating that Mackey had property in Jefferson county which had been attached by virtue of a writ theretofore issued. On account of the fact that personal service could not be had, the attorney demanded that the clerk enter an order that service be made by publication. The clerk made the order, and a copy of the *alias* summons was pub-

lished in a newspaper.   Copies were also mailed to each of the
defendants, addressed to their respective places of residence as.
given in Mr. Cowan's affidavit.   The writ of attachment here-
tofore mentioned was issued on October 1, 1908, and was re-
turned by the sheriff with the indorsement thereon that he had
served the same by attaching moneys in the possession of one
Benjamine belonging to the defendants, and Benjamine had an-
swered that he had in his possession and under his control the
sum of about $4,000, belonging to W. T. Mackey.   On January
21, 1909, the relator appeared specially, by attorney, in the dis-
trict court, and moved the court for an order releasing from
levy the property attached, setting forth at length his reasons:
therefor.   This motion was accompanied by the affidavits of all
of the defendants.   The petitioner further alleges that none of
the defendants had ever entered any general appearance in the
case or submitted themselves in any way to the jurisdiction of
the court; also that on the twenty-first day of January, 1909, the
defendants had appeared specially and filed a motion to quash
the alleged *alias* summons and the service thereof, giving their
reasons therefor; that on May 14, 1909, they had by special
appearance moved the court for an order dismissing the case
upon the ground that the court had no jurisdiction of the de-
fendants; that defendants are all nonresidents of Montana, and
the contracts set forth in the complaint were entered into and
were all to be performed in the state of Oregon; that the action
was not brought to enforce any legal or equitable lien, or claim
to, or to remove any encumbrance, or lien, or cloud upon the
title of real or personal property within this state; that the
district court had denied all of defendants' motions, and had
granted them forty days within which to answer in the cause;
that, unless the district court is prohibited from proceeding, it
will enter default and judgment against the defendants "and
cause this relator great and vexatious delay by an appeal there-
from, and relator says that he has no plain, speedy, or adequate
remedy by appeal or at law or otherwise."

The answer contains, among others, this allegation: "That on
the twenty-fifth day of October, 1909, the relator, Mackey, by

and through his attorney of record, appeared in said district court, the same being in regular session, and, immediately after the decision of said district court upon the relator's motion to dismiss said action for want of jurisdiction over the person of the relator and his codefendants, made application to said court for forty days' time within which to answer to the merits of the action.'' A copy of the following minute entry is attached to the answer: ''Come this day into open court Geo. F. Cowan, Esq., attorney for plaintiff, and C. R. Stranahan, Esq., attorney for the defendants, whereupon * * * defendants' motion to quash the summons and the service is overruled. Defendants except. * * * Defendants ask and are granted forty days in which to answer to the merits.'' The reply, verified by the relator personally, at Portland, Oregon, denies that Mr. Stranahan entered a general appearance when he asked for time to answer, and alleges that such appearance was special; that he announced in open court that his appearance was special, and had no authority to enter any other appearance; that the application was oral and the minute entry was based upon it alone. The cause has been argued and submitted on the briefs of counsel.

The only questions which we are inclined to consider are: (1) Did the court acquire jurisdiction over the persons of the defendants? And (2) Did it have jurisdiction over the subject matter of the action? All other questions argued in the briefs may be raised by direct appeal from the order refusing to dissolve the attachment, or from any judgment hereafter entered against the defendants. (Revised Codes, sec. 7098.)

1. We are of opinion that the district court acquired jurisdiction over the persons of the defendants by virtue of their general appearance in the cause at the time when their counsel asked for and was granted forty days in which to answer to the merits. The allegation in the reply of the relator, who was not personally present, to the effect that such appearance was special, and that Mr. Stranahan had no authority to appear generally, is not entitled to consideration. The reply impliedly admits that he had authority to ask for an extension of time to

answer. No effort has ever been made to correct the minute entry, and a collateral attack, such as is suggested in the reply, cannot avail in this proceeding. The minute entry is in full force and effect. The defendants had choice of two courses of action: They might have obtained the extension of time from the plaintiff's attorney by stipulation, or, in default of that, they were at liberty to request the court to intervene in their behalf. They chose the latter course, and in so doing necessarily appeared in open court for the purpose. A request for time in which to answer to the merits constitutes in our judgment a general appearance, the effect and scope of which may not be limited by any statement on the part of counsel that he desires the record to show that his appearance is special. The order of the court granting additional time to answer undoubtedly had the desired effect. No default could properly be entered until after the expiration of the time allowed. The defendants obtained this advantage by virtue of the action of the court, and, having gained it, they may not be heard to say that the order was a nullity. (See *Parr* v. *Webb, ante,* p. 346, 106 Pac. 353.) In the case of *Kleinschmidt* v. *Morse,* 1 Mont. 100, Mr. Justice Knowles, speaking for this court, said: "What is a general appearance in an action? A party coming into court in an action without limiting the object for which he comes in." The author of the article "Appearances," found in 3 Cyc. 507, thus states the rule: "A defendant is also considered to have made a general appearance when he applies for or obtains leave to answer, or when he applies for or obtains an extension of time to answer."

In the case of *State ex rel. Curtis* v. *McCullough,* 3 Nev. 202, the court said: "Two days after the issuance of this writ the defendant appeared by counsel and applied to this court [original proceeding for *mandamus*] for further time to prepare his answer and make his showing. * * * Upon that understanding the postponement or continuance was granted. However, instead of such showing, counsel appear and claim that the court had no jurisdiction over the defendant and ask that the writ be quashed; but such a motion seems rather out of

place, following, as it did, the affidavit for continuance, and the action of the court upon it. The affidavit, it seems to us, gave the court as complete jurisdiction of the defendant as an answer to the merits would have done." In the case at bar the showing was made orally or the application was made without a showing, but we can discover no difference in principle between the two methods of procedure. In both cases the court was led to believe that, if the motion was granted, an answer would be filed. (See, also, *Gray* v. *Gates,* 37 Wis. 614.)

In the case of *Anderson* v. *Burchett,* 48 Kan. 781, 30 Pac. 174, it was held that an application by an authorized attorney for leave to answer constitutes a general appearance, and, for the purpose of giving jurisdiction, is equivalent to personal service of summons.

In the case of *Hupfeld* v. *Automaton Piano Co.* (C. C.), 66 Fed. 788, Judge Lacombe said: "The defendant has obtained extension of time to plead, answer, demur, or take such other action as it may be advised. This is the equivalent of a general appearance, and the motion to dismiss, as to it, is therefore denied." The same general principle is disclosed in the following cases, viz.: *Fonville* v. *Monroe,* 74 Ill. 126; *Mulhearn* v. *Press Pub. Co.,* 53 N. J. L. 150, 20 Atl. 760; *Orr* v. *Seaton,* 1 Neb. 105. It was also held in the case of *Mayer* v. *Mayer,* 27 Or. 133, 39 Pac. 1002, that where a party appears either before or after judgment, and asks permission to plead to the merits of the cause, he thereby waives all irregularities in the service of process.

On the part of the relator, the following cases are cited: *Vrooman* v. *Li Po Tai,* 113 Cal. 302, 45 Pac. 470, *Powers* v. *Braly,* 75 Cal. 237, 17 Pac. 197, *Benedict* v. *Arnoux,* 38 N. Y. Supp. 882, 1 N. Y. Ann. Cas. 407, and *Bell* v. *Good,* 22 Civ. Proc. Rep. 317, 356, 19 N. Y. Supp. 693; but all of these are distinguishable as involving the construction of statutes unlike ours, and in the judgment of the supreme court of Nevada, as indicated in the case of *Curtis* v. *McCullough, supra,* wrong in principle. With this latter suggestion we are inclined to agree. Our Code provides: "7149. [Revised Codes] A defendant appears

in an action when he answers, demurs or gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him, or has such appearance entered in open court. After appearance, a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. But where a defendant has not appeared, service of notice or papers need not be made upon him unless he is imprisoned for want of bail." It was said by the supreme court of New York, in *Benedict* v. *Arnoux, supra:* "Since the adoption of the Code of Civil Procedure it has been held in a number of cases that a general appearance of a defendant in an action cannot be made in any manner other than that prescribed by section 421 of that Code," which provides: "The defendant's appearance must be made by serving upon the plaintiff's attorney within twenty days after service of the summons, exclusive of the day of service, a notice of appearance or a copy of a demurrer, or of an answer." *Bell* v. *Good, supra,* is to the same effect. The case of *Powers* v. *Braly, supra,* was decided in the light of a California Code provision which read: "A defendant appears in an action when he answers, demurs, or gives the plaintiff written notice of his appearance, or when an attorney gives written notice of appearance for him." The court said: "None of these things were done." In the case of *Vrooman* v. *Li Po Tai, supra,* it was said: "Section 1014, Code of Civil Procedure, defines what shall constitute an appearance. A defendant appears in an action when he answers, demurs or gives written notice of his appearance, or when an attorney gives notice of an appearance for him; and he can appear in no other way." Our statute, however, provides that a defendant appears in an action when he or his attorney has an appearance entered in open court. An action is commenced by filing a complaint in the office of the clerk; and it is therefore not customary with us to give formal notice of appearance, either to the opposite party or his attorney or to the court, but it may be done, and when so done, the party or his attorney is thereafter entitled to notice of all subsequent proceedings as provided in the statute. In *Curtis* v. *McCullough, supra,* Mr. Jus-

tice Lewis said: "Although the statute declares that 'a defendant shall be deemed to appear in an action when he demurs, answers or gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him,' it was evidently not the intention of the legislature to make those the only means by which a defendant could appear, but simply that the filing and service of an answer, demurrer, or notice of appearance should be such an appearance as would entitle the defendant to notice of all subsequent proceedings in the cause."

2. It is contended in the reply brief of the relator that the district court has no jurisdiction of the subject matter of the cause, for the reason that the contracts were in terms to be performed in the state of Oregon, coupled with the fact that the defendants are all nonresidents of Montana. Our statute (Revised Codes, sec. 6504) expressly provides that, if none of the defendants reside in this state, an action may be tried in any county which the plaintiff may designate in his complaint. As to what are styled local actions—such, for example, as those relating to interests in lands—usually the venue or place of trial is the district or the county where the subject matter lies. But in general, transitory actions may be tried wherever personal service can be made on the defendant. As to the general jurisdiction of the courts of a state, this is coextensive with its sovereignty, which is limited only by the territory of the state and attaches to all the property and persons within the limits thereof. (Wells on Jurisdiction of Courts, secs. 112, 113.)

The supreme court of North Carolina in *Miller* v. *Black,* 47 N. C. 341, said: "The case presents simply the question whether one citizen of the United States can sustain an action against a citizen of another in a state where neither lives. * * * To many purposes the citizens of one state are citizens of every state in the Union. They are not aliens, one to the other. They can purchase and hold, and transmit by inheritance, real estate of every kind in each state. It would be strange indeed if a citizen of Georgia, meeting his debtor, a citizen of Massachusetts, in the state of New York, should not have a right to demand what was due him, nor be able to enforce his demand by a resort

to the courts of that state.    \*    \*    \*    Must a citizen of California to whom one, a citizen of Maine, owes a debt,    \*    \*    \*    go to Maine, and bring his suit there, or wait till he catches him in California? We hold not, but that the courts of every state in the Union, where there is no statutory provision to the contrary, are open to him to seek redress." The same court, in *Walters* v. *Breeder*, 48 N. C. 64, said: "We think it is settled that a citizen of South Carolina may sue another citizen of that state in the courts of our state upon a personal cause of action originating in South Carolina."

In the case of *Johnston* v. *Insurance Co.*, 132 Mass. 432, the supreme judicial court, through Mr. Justice Endicott, said: "It has been decided in this commonwealth that one foreigner may sue another in our courts upon a simple contract debt made without our jurisdiction, if the defendant is found here and process can be legally served upon him." In the case of *Hall* v. *Williams*, 6 Pick. (Mass.) 232, 17 Am. Dec. 356, it was held that, if a citizen of one state was in another state and served with process there, he was bound to appear and make his defense, or submit to the consequences. The supreme court of Iowa, in *Darrah* v. *Watson*, 36 Iowa, 116, said: "Is it true that the courts of our state cannot acquire jurisdiction of the person of a citizen and resident of a sister state by the service of original process upon such citizen within the jurisdiction of the former state? We think it is not." Again, the supreme judicial court of Massachusetts in *Barrell* v. *Benjamin*, 15 Mass. 354, said: "Personal contracts are said to have no *situs* or locality, but follow the person of the debtor, wherever he may go; and there seems to be no good reason why courts of any country may not lend their aid to enforce such contracts." And it was therefore held that one foreigner might sue another who was transiently within the jurisdiction of the courts of the state upon a contract made between them in a foreign country. (See, also, *Gardner* v. *Thomas*, 14 Johns. (N. Y.) 134, 7 Am. Dec. 445; Hawes on Jurisdiction of Courts, sec. 16; *Lisenbee* v. *Holt*, 1 Sneed (33 Tenn.), 42; *Swan* v. *Smith*, 26 Iowa, 87.) In the case of *Peabody* v. *Hamilton*, 106 Mass. 217, it was said:

"'That both parties are foreigners is no ground for dismissing the writ. It is not necessary that a foreign plaintiff should be personally within the jurisdiction in order to institute an action. * * * Personal actions of a transitory nature may be maintained in any jurisdiction within which the defendant is found, so that process is legally served upon him. This we understand to be the general rule of the common law." In *Dewitt* v. *Buchanan*, 54 Barb. (N. Y.) 31, it was held: "Actions for injuries to the person are transitory and follow the person; and therefore, so far as the nature of the action is concerned, one foreigner may sue another foreigner in our courts for a tort committed in another country, the same as on a contract made in another country."

In our judgment there can be no question that the district court of Jefferson county had jurisdiction of the subject matter of the action, and, it having acquired jurisdiction over the persons of the defendants by their voluntary general appearance, it follows that the proceedings in this court should be dismissed; and it is so ordered.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.