STATE OF MISSOURI at the Relation and to the Use of J. V. CONRAN, Relator, v. JOHN E. DUNCAN, Judge of the Circuit Court of New Madrid County, and O. A. COOK.—63 S. W. (2d) 135.

Court en Banc, August 23, 1933.

674

*Ward & Reeves* for relator.

*McKay & Peal* for respondents.

ELLISON, J.—Prohibition. Messrs. O. A. Cook and the relator, J. V. Conran, were candidates for the nomination for Prosecuting

Attorney of New Madrid County on the Democratic ticket at the August primary election, 1932. According to the returns of the election and the certificate of the canvassing board, Conran was nominated. Cook thereupon instituted a proceeding in the New Madrid County Circuit Court to contest the nomination under Laws 1931, page 205. He gave written notice of his intention so to do and filed his verified petition in the office of the circuit clerk on August 11. On August 16 the respondent, Honorable John E. Duncan, judge of the circuit, caused an entry to be made of record that the contestant then and there appeared in open court in person and by counsel, and presented his petition; that the contestee (relator) failed to appear; that the court "having examined said petition and having determined the same on the merits thereof finds that said petition states a good cause of action;" and the court accordingly ordered a recount of the ballots as prayed in the petition, and that the cause be set and heard on August 26 and summons be issued returnable that day.

On August 20, four days before the date set for the circuit court hearing, the relator, Conran, made application to this court for a writ of prohibition, and on August 22 our preliminary rule was issued. Respondent made return to our writ on September 2, and relator filed a reply thereto on September 5. The cause was argued orally by relator on October 28.

These pleadings present two issues. First, under the statute, Section 2041, Revised Statutes 1929, the May Term, 1932, of the New Madrid County Circuit Court began on the third Monday in May, the next regular term being in September. Relator says the last regular court day of the May Term was July 2 and that on that day the respondent judge caused an entry to be made of record as follows: "Now at 12 o'clock noon this day, court adjourns to ———." Relator contends the order was a nullity; that the term lapsed after the expiration of three days, under Section 1850, Revised Statutes 1929; and that without calling a special term as provided by Sections 1850, 1851 or 1852, Revised Statutes 1929, the respondent judge appeared in court on August 16, directed the clerk to insert that date in the blank space left in the entry of July 2, and proceeded to enter the order in relator's election contest case referred to in the first paragraph hereof. These allegations of fact are supported by affidavits of the relator and the circuit clerk and sheriff of New Madrid County, incorporated in relator's petition by reference and attached thereto as exhibits. The ultimate legal contention made by relator is that in consequence of the foregoing the order made in the relator's election contest case on August 16 was void and that the respondent judge was without jurisdiction to hear the cause on August 26 as he was about to do when our preliminary rule in prohibition was issued.

The respondent judge alleges in his return that the New Madrid Circuit Court was in session when he made the foregoing order in the election contest case on August 16; denies the court adjourned on July 2 to an unknown date; and avers the fact to be that on July 2 an adjournment was taken to August 16, as appears from a certified copy of the minute record of the court attached to the return, as follows: "Now at 12:00 o'clock noon this day Court adjourns to August 16th next at 9:00 o'clock A. M." Respondent's legal contention is that the record entry just quoted cannot be disputed by oral testimony or the affidavits presented by relator; that the record so made could only be attacked by other portions of the court record, which is not done in this case.

The second contention made by relator is that Laws 1931, page 205, is invalid because it authorizes the *judge* of a court to hear election contest cases on their merits whereas under Section 1, Article VI of the State Constitution the judicial power of the State is vested in the *courts* therein mentioned, and cannot be exercised by a judge except when duly sitting as a court. Relator further maintains the act offends against Section 30, Article II of the State Constitution in that it deprives relator of his property without due process of law by providing a means whereby his office may be taken from him arbitrarily and capriciously through action of the circuit judge without notice, right to a hearing, right of counter-contest or right of appeal. The respondent contends, of course, that the act is valid. The reasons advanced *pro* and *con* will be stated more fully in the course of the opinion. *

I. The first question to be considered is whether the case has become moot. After the cause was at issue it was set on the docket of this court for argument on October 28, which was the fifth day of the term, with a number of cases preceding it in the regular order. Counsel for relator appeared and made an oral argument. No one appeared for respondent and there was no request for an immediate decision. The general election at which the contestant Cook aspired to be the candidate of his party was held ten days thereafter on November 8, and the contestee, Conran, whose nomination had been certified by the canvassing board, was elected as the public records in the office of the Secretary of State show. In these circumstances and notwithstanding the peculiar history of the case, we are convinced the rights of the contestant, Cook, are foreclosed.

■■. A candidate for nomination to public office has no inherent right to contest his opponent's nomination at a primary election. Where the statutes afford such right they are controlling and exclusive. [20 C. J., sec. 122, p. 119.] The Act of 1931, Laws 1931, page 205, distinctly evidences an intent that contest proceedings shall move along with expedition and be concluded in time to permit the name

of the successful candidate to be placed on the election ballot. And it has heretofore been judicially conceded in this State that legal proceedings to determine whether the name of a candidate should be printed on an election ballot must be finally adjudicated in time to allow for the placing of the name on the ballot, State ex rel. Neu v. Waechter, 332 Mo. 574, 58 S. W. (2d) 971. With special reference to primary election contests it was said in State ex rel. Dorsey v. Sprague, 326 Mo. 654, 660, 33 S. W. (2d) 102, 104, "a primary contest, in order to be effective, must be summary and speedy." Speaking of Laws 1929, page 194, the immediate predecessor of the Act of 1931 here involved, this court declared in State ex rel. McDonald v. Lollis, 326 Mo. 644, 652, 33 S. W. (2d) 98, 101, "these provisions indicate a clear intent on the part of the Legislature to provide for a speedy contest in order that the successful party's name might appear on the ballot as a candidate at the November election." All this implies that if the contest is not concluded in time to permit of the placing of the name on the ballot, the contest proceeding must yield to the election, rather than the election to the contest proceeding—in other words, the fact that some contest proceeding is pending and undetermined will not invalidate the election. And so it has been held in other jurisdictions. The doctrine as stated in 20 Corpus Juris, section 132, page 123, is as follows: "Where no questions of general public importance are involved, the court cannot hear or determine a contest after the general election has been held, unless there is some statutory reason therefor."

This text is supported by the following decisions: Johnson v. Dosland, 103 Minn. 147, 114 N. W. 465; Johnson v. Bauchle, 149 Minn. 144, 146, 182 N. W. 987; Townsend v. Crow (Md.), 82 Atl. 661. In the Dosland case, first cited, the contest proceedings in the district court were protracted until after the general election and finally resulted in a judgment for the contestee, from which the contestant appealed. The Supreme Court of Minnesota said:

"The contestee's name went upon the official ballot under order of the court and the sanction of the law, and the authorities do not support the suggestion that the election may be overturned and electors disfranchised, long after the election is past and the result thereof acted upon by those interested, for irregularities, or even fraud, in nominating conventions or primary nominating elections. Contests for nomination as party candidates for public office must be settled before the general election, and, when not, those whose names go upon the official ballots as the regular nominees are entitled to all benefits therefrom, whether they, perchance, could have been in contest proceedings ousted of the right or not."

Since the election laws of this State do not make the pendency of an undetermined primary election contest case fatal to the holding of an election to fill the office involved, and since the Act of 1931 so

plainly discloses a legislative intention that such contest proceedings shall be prosecuted to a conclusion before the election, we must hold in this case that questions as to the rights of the contestant, Cook, have become moot. To all intents and purposes and by analogy the contest action is abated so far as he is concerned. [Gantt v. Brown, 244 Mo. 271, 301, 149 S. W. 644, 646, Ann. Cas. 1913D, 1283.]

■■ But while this is so, the contestant Cook, though interested, is not a party and would not have been a proper party respondent to this proceeding in prohibition, the purpose of which is to prevent usurpation of judicial power. [State ex rel. Phillips v. Barton, 300 Mo. 76, 85, 254 S. W. 85, 87.] He had and has no control over the proceeding and after our preliminary rule was issued he could not even have dismissed the main case. [State ex rel. Pettibone v. Mulloy, 330 Mo. 1084, 52 S. W. (2d) 402.] Neither can we say our writ was improvidently issued *at the time it was issued*, so far as concerns the questions thus far considered, because that was done more than eleven weeks before the general election was held. In these circumstances, and because of the importance of the other questions raised we shall decide the case.

■ In so doing, we do not forget it has been said that ordinarily a relator in prohibition cannot assail the constitutionality of a statute under which a *nisi prius* judge is proceeding, since by the writ of prohibition we inquire only into the jurisdiction of the lower court, and circuit courts admittedly have jurisdiction to determine such constitutional questions. [State ex rel. Chase v. Hall, 297 Mo. 594, 600, 250 S. W. 64, 65.] This rule, however, has its exceptions where the remedy by appeal is inadequate, or there is no right of appeal, as in the case here involved. [50 C. J. sec. 29, p. 670.] Furthermore, both parties to this proceeding join issue on the point, and constitutional questions sometimes may be decided by this court in original prohibition proceedings because matters of great public concern are involved. [Ex parte Alvin Bass, 328 Mo. 195, 201, 40 S. W. .(2d) 457, 459.] Also, in like circumstances, prohibition cases have been decided after they had become moot because of a change in the underlying facts. [State ex rel. A., T. & S. F. Ry. Co. v. Trimble, 254 Mo. 542, 552, 163 S. W. 860, 862; State ex rel. Caldwell v. Cockrell, 280 Mo. 269, 290, 217 S. W. 524, 532.]

II. The relator's first contention tenders an issue of fact. He asserts the adjournment of the New Madrid County Circuit Court on July 2 was not to a day certain, but to some undetermined date in the future; and that the order of adjournment entered on July 2 so showed by leaving a blank for the date to which the adjournment was taken. It is further asserted that when court convened on August 16 that date was inserted in the blank place left in the order of July 2, thereby making it appear that the adjournment originally

682

had been to August 16. These facts are alleged in the relator's petition and in his reply to respondent's return thereto. To substantiate them he annexes his affidavit and the affidavits of the circuit clerk and sheriff. The respondent's return denies these are the facts. He further affirmatively alleges court adjourned on July 2 to August 16; and he brings up a certified copy of the order of adjournment so reciting. Can the relator impeach that record in this proceeding by evidence *dehors* the record?

■■ If there is any proposition of law that is fundamental and settled, it is that a court of record can speak only by its records, which import absolute verity and are not open to collateral attack. [Cunio v. Franklin County, 315 Mo. 405, 408, 285 S. W. 1007, 1008; 7 R. C. L. sec. 45, p. 1018; 23 R. C. L. sec. 7, p. 158; 15 C. J. sec. 404, p. 979; 22 C. J. sec. 1388, p. 1077.] This rule applies not alone to final judgments, but to every order made in the course of a judicial proceeding. [State ex rel. Van Hafften v. Ellison, 285 Mo. 301, 311, 226 S. W. 559, 562, 12 A. L. R. 1157.] The word "collateral" as used in the expression "collateral attack" is the antithesis of "direct." A direct attack in general means an attack made in the very proceeding in which the judgment or record is challenged, or on appeal therein, or by some separate proceeding provided by law for that sole purpose. Two of the latest Missouri cases defining the above terms are Ray v. Ray, 50 S. W. (2d) 142, 143, and Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 377, 300 S. W. 778. 780. See, also, "collateral attack" in Words and Phrases, First, Second, Third and Fourth Series.

■ Is a proceeding in prohibition a means provided by law for making a direct attack contradicting the record of a lower court, or does it constitute a collateral attack? The question is difficult and there seem to be few if any cases expressly deciding it. Vanfleet on Collateral Attack. section 2, page 4, says prohibition makes a direct attack on a judicial proceeding. High on Extraordinary Legal Remedies (3 Ed.), section 768, page 715, and Spellman, *id.* (2 Ed.), section 1721, page 1476, both say the proceeding is wholly collateral to the main case. The rule prevails almost universally, however, that the jurisdiction of a lower court may be challenged by prohibition on facts outside the record. In 22 Ruling Case Law, section 18, page 20, the law is thus stated: "Indeed, it has been held that prohibition will not lie if the inferior court has prima facie jurisdiction, i. e., if on the face of the papers the cause is within the cognizance; but the better rule in such cases has been to grant such writ on showing by evidence, *aliunde* the record, that the court had no jurisdiction." It has also been said where the lack of jurisdiction appears on the face of the record the writ goes as a matter of right; otherwise, as a matter of discretion. [50 C. J. sec. 11, p. 656.] Our own cases recognize that want or excess of jurisdiction may be

shown from facts *dehors* the record. Thus in State ex rel. Atty.-Gen. v. Gill, 137 Mo. 681, 39 S. W. 276, it was held that since the lack of jurisdiction *nisi* did not appear on the face of the record, the jurisdictional objections "should, at least, be first presented to" the lower court before application is made to this court for prohibition. But it has been held several times this is not always prerequisite to the issuance of the writ by this court, the matter being discretionary. [State ex rel. Burton v. Montgomery, 316 Mo. 658, 664, 291 S. W. 472, 474.]

But, conceding the relator in prohibition may draw on facts outside the record of a lower court to show it is acting without jurisdiction or in excess of its jurisdiction, can he do so for the purpose of impugning and contradicting the record actually made and written below? It is said he cannot, in Lieberman v. Superior Court, 72 Cal. App. 18, 34, 236 Pac. 570, 577, and in State ex rel. Mackey v. Dist. Court, 40 Mont. 359, 363, 106 Pac. 1098, 1100, 135 Am. St. Rep. 622. The same seems to be held of courts of record of general jurisdiction, as distinguished from courts of justices of the peace, in Nelson Trans. & Stor. Co. v. Jarrett, 110 W. Va. 97, 99, 157 S. E. 46. Likewise in a recent original prohibition case decided by this court en banc, State ex rel. Terry v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13, 16, it is said: "We are limited to the record made in the courts below." Indeed, the holding in this Terry case seems to be broad enough to forbid the adduction of any evidence *dehors* the record.

While the cases cited in the preceding paragraph assume without analytical discussion that the records of a lower court cannot be contradicted in prohibition proceedings, and treat the latter as a collateral attack, we believe it to be the better rule. Such has been the course of decision followed by this court in mandamus cases, State ex rel. Chaney v. Grinstead, 314 Mo. 55, 76, 282 S. W. 715, 721; in certiorari, State ex rel. Horton v. Clark, 320 Mo. 1190, 9 S. W. (2d) 635, 638; *habeas corpus*, In re Lydia Sisk, 305 Mo. 328, 332, 265 S. W. 536, 538; and injunction, Western Tie & Timber Co. v. Pulliam, 237 Mo. 1, 19, 139 S. W. 144, 148. It was held in Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. l. c. 379, 300 S. W. l. c. 781, that by force of Section 1519, Revised Statutes 1929, injunction to restrain the enforcement of a judgment is a direct attack in which the judgment may be impeached; but the case does not say the record entries of the court rendering the judgment may be contradicted.

In Ex parte Dusenberg, 325 Mo. 881, 885, 30 S. W. (2d) 94, 95, it was held a writ of error *coram nobis* reached only errors of fact affecting the proceedings culminating in a judgment, which were not in issue and adjudicated by the judgment; and that "only such errors can be assigned as are consistent with the record before the court." The facts there were that after judgment and sentence on

a plea of guilty to the commission of a crime in a certain county, the defendant after the lapse of the term sought by the writ of *coram nobis* to assail the judgment by showing the crime had been committed in another county outside the jurisdiction of the court and it was held he could not do so. In State ex rel. Burton v. Montgomery, 316 Mo. 1. c. 664, 291 S. W. 1. c. 474, where there was a similar dispute as to the actual venue of the alleged crime, this court ruled prohibition could lie, but quashed its preliminary rule in the exercise of a judicial *discretion*. However, the proceeding did not involve any attempt to impeach or contradict any record entry of the lower court.

We think it should be said the attack is not direct when a litigant seeks by the writ of prohibition first to impeach the entries of a lower court by proving they were other than as they appear, and, having done so, *then* to challenge the jurisdiction of the court. Prohibition is not a proceeding for the correction of the record of an inferior court of record. By bringing the matter to the attention of the court concerned any justifiable correction usually can be obtained, and even where not, that course would make the attack a part of the very proceeding assailed, and therefore direct. If the error were not discovered until after the conclusion of the proceeding it would be too late to apply for prohibition anyway, since that writ will not go to prohibit something already done, State ex rel. Kansas City v. Burney, 324 Mo. 363, 367, 23 S. W. (2d) 117, 119. Prohibition is aimed directly at the *jurisdiction* of the lower court, and is available where the lack of jurisdiction appears either on the face of the record or *dehors* the record—unless, in the latter instance, it is necessary to reform and correct the record to make the want of jurisdiction apparent.

III. Relator further contends Laws 1931, page 205, providing for contests of nominations made by primary elections, is invalid because it authorizes the *judge* of a circuit court to discharge judicial functions whereas Section 1, Article VI of the State Constitution vests the judicial power of the State in the *courts* therein designated. In other words, the objection is that the act permits the judge to act officially and judicially in vacation, and while not sitting as a court. The 1929 law on the same subject, Sections 10293 to 10297, Revised Statutes 1929, was declared unconstitutional for that same reason in State ex rel. McDonald v. Lollis, 326 Mo. 644, 33 S. W. (2d) 98, and State ex rel. Dorsey v. Sprague, 326 Mo. 654, 33 S. W. (2d) 102. The question is whether the 1931 act has been sufficiently modified to meet the requirements of these two cases.

The Act of 1931 is as follows. The parts italicized do not appear

in the Revised Statutes of 1929. The parts in parenthesis appear in the Revised Statutes of 1929 but not in the Act of 1931:

"Sec. 1. Any candidate whose name appeared upon the primary ballot of any political party at any primary election held in any of the election precincts or voting districts in this· State who desires to challenge the correctness of the count and returns for the office for which he was a candidate, may at any time within five days after any canvassing board or board of election commissioners shall have certified the result of the canvass of the votes as provided by Section 10274 (,R. S.) *of the Revised Statutes of* 1929, first serving a written notice upon the contestee of his intention so to do, file his verified petition in *the office of the clerk of* the circuit court of the county, or counties or city where irregularities are alleged to have occurred, charging that fraud, misconduct or irregularity in the count of the ballots or in the returns thereof was committed in any one or more of the election precincts or voting districts of said county or city, stating briefly the particulars of the alleged fraud, misconduct or irregularity and the precincts or voting districts where the same was committed.

"Sec. 2. Circuit courts (and the judges thereof in vacation) are ·hereby vested with jurisdiction and authority to hear and determine contests of primary elections. When a petition shall be filed as provided in the next preceding section, the petitioner shall forthwith present the same to the judge of the court, or if he be sick or absent from his circuit, to the judge of an adjoining circuit who shall note thereon the date of presentation and *if good cause appear on .the face of the petition the court or judge if* (for) good cause *be* shown at a hearing upon .*the merits of* said petition within five days from said date, *shall* (the court may) make an order for a recount of the ballots brought in question by the petition, and shall designate the day when *the same shall be heard by the court* (he will hear the same, which shall be in the county of the precincts named not more than five days thereafter). *If the petition be filed and presented in vacation the judge to whom it is presented shall forthwith convene the court in special session for the purpose of hearing such contest.* Summons shall be issued forthwith to the contestee returnable to the day designated by the court or judge in said order, and the same may be served in any county of the State in the manner provided for serving of process in civil actions. The clerk of the court shall transmit by registered mail a certified copy of said order to the secretary of state, county clerk and board of election commissioners (if there be any), who shall thereupon suspend action upon the returns of the election precincts or voting districts in controversy until the cause shall have been determined. The petitioner shall give security for all costs,

and the cause shall have preference in the order of hearing to all other cases.

"Sec. 3. Whenever a recount has been ordered as provided in the preceding section, the court shall order to be brought before it all the ballots, poll books, registration books and statements of the precincts in question to the same extent and in like manner as the judges of election had before them in making the count in the precincts, and shall have jurisdiction and authority, in a summary manner, as well as to pass upon the form and determine the legality of the ballots as to determine the qualifications of voters whose ballots may be brought in question: Provided, that the appearance of a name of a voter upon the poll books of any such election precincts or voting district shall constitute prima facie evidence of the proper qualifications of said voter; and provided further, that the appearance of the name of any voter upon the register of qualified voters in cities and counties where registration of qualified voters is now or may hereafter be required, shall be *prima facie* (conclusive) evidence of the proper qualifications of such registrant. Comparison shall be made between the names of voters on the poll books and the names appearing upon the register of qualified voters, and no ballot shall be counted except the ballots of persons who are duly registered; and the ballot of no person found by the court to be disqualified to vote at said primary election shall be counted.

"Sec. 4. The court (or judge) shall, from a list of four names which may be submitted each by the contestor and contestee, respectively, appoint two persons from each list, who shall be disinterested electors of the county or city, for the purpose of opening and counting the ballots; and the persons so appointed shall take the oath prescribed for, and receive the same pay as regular judges of election. The contestor and contestee may each be permitted to be present in person or by attorney as witnesses to the count. After all questions relating to the form and legality of the ballots and the qualifications of persons voting at said primary election shall have been determined, the persons so appointed shall at once proceed to open, canvass and count said ballots in the presence of the court (or judge), and after the count and canvass shall have been completed, they shall tabulate by precincts or voting districts the ballots cast for the contestor and contestee, respectively, and make report in writing to the court (or judge) of the result of their count and canvass. The court (or judge) shall thereupon render its judgment based upon the issues of law and fact determined as herein set forth, and cause two certified copies thereof to be transmitted, one to the county clerk of the county or board of election commissioners of the city, and one to the secretary of state of the State of Missouri, and said officers shall correct their records to conform to said judgment.

"Sec. 5. The judgment of the court (or judge) in the cause shall be final and conclusive, from which there shall be no appeal. The practice and procedure prescribed in civil actions shall be followed in all respects not inconsistent with this act; provided, that if the contestee shall fail to appear and participate in the proceeding, the costs shall be taxed against the contestor."

From the foregoing it will be seen that Section 1 of the Act of 1931 has no bearing on the constitutional question here under discussion. It is substantially the same as the corresponding section of the 1929 statute and merely provides for the filing of the contest petition.

The principal changes come in Section 2 of the act. The 1929 statutes provide that circuit courts *and the judges thereof in vacation* should be vested with jurisdiction to determine primary election contests, whereas Section 2 of the 1931 law restricts that jurisdiction to *circuit courts* alone. This is an important change.

Said Section 2 then goes on to provide that when a contest petition has been filed it shall be presented forthwith to the *judge* of the court, or if he be sick or absent from the circuit, to the *judge* of an adjoining circuit, who shall note thereon the date of presentation. Then the section says if good cause appear on the face of the petition (and) if good cause be shown at a hearing upon the merits of the petition held within five days from said presentation, the *court or judge* shall make an *order* for a recount of the ballots challenged, and shall designate a day when the hearing shall be held by the *court.* This undoubtedly authorizes the judge of the circuit, or even the judge of an adjoining circuit (in the circumstances specified), to determine whether the petition states a good cause of action, and also whether the contestant has a "good cause" on the "merits" of the petition, which we understand to mean, whether he can substantiate his petition by making a prima facie showing of facts alleged justifying a recount. If both these questions are resolved in favor of the contestant the court or judge *orders* a recount, but the hearing is to be held by the *court.* The corresponding section of the 1929 statute permitted the hearing to be held by the judge.

The section next says if the petition be filed and presented in vacation the judge *to whom it is presented* shall forthwith convene the court in special session for the hearing of the contest. If the petition should be presented to the judge of an *adjoining circuit,* it may be doubted whether he could convene in special session the court of another county and circuit, where the suit is pending, of which he is not judge, or whether he could "designate the day" when that court would hold the hearing (as the section provides a few lines earlier) but these objections are not made by relator, nor would they

affect the operation of the act in most cases or invalidate it as a whole.

Section 3 of the 1931 Act prescribes the rules governing the hearing of the contest by the *court* and the orders to be made. Section 4 contains further provisions along this line, and others relative to the judgment to be rendered and the execution thereof. Four times in this section the words "or judge," which appeared in the 1929 law, are stricken out, leaving the functions mentioned to be performed by the court alone. The same is done in Section 5. Nowhere in any of these three sections is any authority delegated to the judge. The entire contested hearing on the merits is before the court.

In our view the foregoing changes in the 1931 law cure every infirmity pointed out in the Lollis and Sprague cases, supra. We shall not extend this opinion by entering into a detailed discussion of what these two decisions hold. Suffice it to say both stress the provisions of Sections 2 and 4 of the 1929 law (Secs. 10294 and 10296, R. S. 1929) already discussed herein. The Lollis case summarizes its conclusions thus (326 Mo. l. c. 652, 33 S. W. (2d) l. c. 101): "We interpret the statute as expressing a legislative intent to afford any candidate for nomination to public office, in any county of this State, an opportunity to contest a primary election, regardless of whether or not the circuit court of his county is in session." No such interpretation can be put upon the present statutes. They plainly exclude it by vesting jurisdiction in the circuit court alone, by exscinding the word "judge" whenever it formerly appeared (except as we shall note presently) and by providing the circuit court shall be convened forthwith in special session. There is an obvious effort to make the legislation conform to the Lollis and Sprague decisions. That fact should be considered in construing the law.

This much remains, which relator contends still makes the law bad. It allows the judge of the court, or in some instances the judge of an adjoining circuit, to determine in vacation whether the petition on its face shows "good cause" and provides for a vacation hearing by the court or judge to determine whether good cause has been shown on "the merits" of the petition. But this is merely preliminary. If the judge should determine the petition states a cause of action and that good cause exists on the merits for trying out the issues tendered there is nothing in the statute forbidding the contestee from challenging the sufficiency of the petition and contestant's preliminary proof again at the hearing before the *court*. Indeed, obviously and necessarily the court must again pass on the sufficiency of the evidence at the final hearing. These preliminary inquiries into the pleading and proof are simply for the purpose of determin-

ing whether the facts justify the opening of the ballots and the holding of the court hearing.

It is argued, however, that the 1931 law says *if* the judge in vacation shall determine the contestant's petition and proof on the merits show good cause, he shall order the hearing; which means he is vested by the statute with jurisdiction to decide these questions either way, and in the event he should decide good cause has *not been* shown a hearing would not be ordered and the judge's determination in vacation would operate as an exercise of final jurisdiction disposing of the case, like sustaining a demurrer to a petition or plaintiff's evidence. This, it is said would clearly offend against Section 1, Article VI of the State Constitution, supra; and it may be, if relator's contention is correct, it would also violate Section 10, Article II of the Constitution, providing the courts of justice shall be open to every person, though relator does not raise that point.

We think, however, a decision by the judge in vacation adverse to the contestant would not be dispositive of the whole case. The statute provides for the filing of the contest petition in the office of the circuit clerk before it is presented to the judge in vacation. That is an institution of the action and makes the case pending. If the judge should refuse to convene the court in special session and hold the hearing it might deprive the contestant of the emergency relief he seeks when there was to be no regular or adjourned term of the court before the general election, but procedurally the judge's decision would not be final, as we have already held above, and the contestant could renew his application at the first day of court, just as the contestee could make an assault on the petition and preliminary proof.

The situation would not be unparalleled. Suppose a plaintiff should file a petition for an injunction and be in urgent need of immediate injunctive relief by way of a temporary restraining order or the like. There is no law, so far as we know, that makes it incumbent on the circuit judge in vacation to grant it regardless of whether the petition is sufficient. On the contrary, this is said in Albers Commission Co. v. Spencer, 245 Mo. 368, 376, 150 S. W. 712, 713:

"Our statutes do not designate what shall be sufficient grounds for dissolving a temporary injunction; but it is undoubtedly a sound rule that when a petition states no sufficient grounds for relief, no injunction should issue; and if one has issued, it should be dissolved."

Again, suppose a railroad or other corporation authorized to invoke the law of eminent domain is constructing a great improvement for which right of way is required, and its progress is arrested by some landowner. It files a condemnation suit and applies to the circuit judge in vacation for the appointment of commissioners to assess damages and put it in a position to take the land required. Must

the judge at all events grant the relief? The law on this subject is thus declared in Chicago, Great Western Railroad Co. v. Kemper, 256 Mo. 279, 289, 166 S. W. 291, 293, as follows, omitting cases and statutes cited, and with emphasis ours:

"Our statutes relative to condemnation contemplate two hearings in the course of the proceeding. First, upon the filing of the petition for condemnation the court or the judge thereof in vacation must make one order requiring all interested parties to be notified of the time and place where he will hear said petition. . . . The filing of the petition and service of notice gives the court jurisdiction of the subject-matter and the person. . . . Appearance of the defendant will confer jurisdiction even without service of notice.

"At the hearing the sufficiency of the petition and the necessity for the condemnation are determined by the court, or the judge thereof in vacation. *If the petition is sufficient, and the court determines that condemnation should be had,* then the court or the judge thereof in vacation appoints the three statutory commissioners to assess the damages, and make report thereof to the court. . . . These proceedings constitute the first branch of the case."

Likewise, in considering a cause involving what is now Section 2, Revised Statutes 1929, authorizing a probate judge in vacation to refuse letters and dispense with a probate administration, this court held in Parsons v. Harvey, 281 Mo. 413, 421, et seq., 221 S. W. 21, 23, the statute was constitutional, and, citing earlier cases, that Section 1, Article VI, supra, of our organic law does not forbid the exercise in vacation of quasi-judicial powers subsidiary to the case pending, but is aimed at the trial of issues and pronouncement of judgment. And, although the statute did not expressly require confirmation by the probate court in term of the action taken in vacation, this court said the vacation order would not be final, and that parties aggrieved could challenge the action of the judge by taking timely steps before the court. On the broad question of what is judicial power see also, Johnson v. Wabash Railroad Co., 259 Mo. 534, 543, 168 S. W. 713, 715; Lusk v. Atkinson, 268 Mo. 109, 116, 186 S. W. 703, 704; State ex rel. Phillips v. Barton, 300 Mo. 76, 86, 254 S. W. 85, 87; Ex parte Lewis, 328 Mo. 843, 846, 42 S. W. (2d) 21, 22.

IV. Finally it is argued the 1931 Act offends against Section 30, Article II of the State Constitution in that it deprives the relator of his property without due process of law. It is said the act authorizes arbitrary and capricious action on the part of the circuit judge whereby a candidate's nomination may be taken from him without notice, right to a hearing, right of counter-contest or right of appeal. This assignment may be disposed of briefly. As we have ruled, the hearing provided for by Section 2 of the law is not final but preliminary, and deprives the contestee of nothing. The real hearing is before the circuit court later, for which a summons

.is issued and served on the contestee. And in point of fact the preliminary hearing is not without notice. Section 1 of the act provides the contestant shall serve a written notice upon the contestee before filing his petition in the circuit court. But if it were otherwise and there were no notice of the preliminary hearing, that would afford no basis for an objection on jurisdictional grounds, as witness the rule in injunction proceedings, State ex rel. McMillan v. Woodside, 254 Mo. 580, 591, 163 S. W. 845, 847. Neither can the relator contend his nomination to an office is "property" within the meaning of the Constitution. It may be a valuable right, as the Lollis case holds (326 Mo. l. c. 649, 33 S. W. (2d) l. c. 100), but it is not property. Even after appointment or election, a public office is not property. [State ex rel. Kansas City v. Coon, 316 Mo. 524, 541, 296 S. W. 90, 96.] Nor are we authorized to overthrow the statute because it may appear impolitic or unjust. [Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 997, 30 S. W. (2d) 447, 462.]

In view of the conclusions reached it follows our preliminary rule in prohibition should be and it is hereby discharged. But inasmuch as the general election of 1932 has long since been held the circuit court is now without authority to hear and determine the primary election contest and the same should be dismissed at the cost of the relator. All concur.