STATE OF MISSOURI at the relation of GEORGE A. S. ROBERTSON, Superintendent of the Insurance Department of the State, Relator, v. NIKE G. SEVIER.—132 S. W. (2d) 961.

Court en Banc, November 7, 1939.

*Roy McKittrick*, Attorney General, *Drake Watson* and *Harry H. Kay*, Assistant Attorneys General, for relator; *Charles L. Henson* of counsel.

*W. T. Ragland* and *Chas. H. Mayer* for respondent.

TIPTON, C. J.—Prohibition: Relator seeks to prohibit respondent from passing upon a motion filed by the Central Missouri Trust Company, in which it asks the respondent to make an order directing it to pay to the relator the money it now has on deposit growing out of the restitution proceedings in the Aetna Insurance Company case, commonly known as the 10 per cent insurance rate reduction case.

Seventeen years ago the then Superintendent of the Insurance Department (hereinafter called the Superintendent) ordered a ten per cent reduction in fire insurance rates in this State. Under stipulation and by court order the insurance companies continued to collect the old rate pending a court review of the order, and gave bond to refund the excess premiums collected if the review proceeding should be determined against them. The Circuit Court of Cole County set aside the order. In June, 1926, this court on appeal reversed that judgment and sustained the reduction order. [Aetna Ins. Co.

v. Hyde, 315 Mo. 113, 285 S. W. 65.] Our mandate directed that the Superintendent "be restored to all things which he lost by reason of said erroneous judgment" of the circuit court.

The insurance companies made certain refunds to policyholders of excess premiums collected. But thereafter the Superintendent filed in said circuit court a motion claiming that the companies had not made full restitution and praying that they be required to pay into court, with interest, the excess premiums still in their possession. The circuit court found that the companies had collected excess premiums in a designated total amount, and rendered judgment against them therefor, with interest, but further provided that they should have credit on the judgment for the sums already returned to the policyholders.

In the case of State ex rel. Abeille Fire Ins. Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361, we sustained the action of the circuit court but held it was without authority to appoint more than three referees or to require a deposit for payment of costs. Thereafter, the circuit court appointed Messrs. L. H. Cook and H. P. Lauf as commissioners and custodians to examine the accounts and to receive the amounts due from the insurance companies. In other words, their duties were to conduct hearings and determine the sums of money due from each insurance company, receive this money from them and return the amounts due to each policyholder. It also ordered that the various sums of money received from the insurance companies be deposited in the Central Missouri Trust Company, that no money be paid out of the deposit except upon the written order of the court, and that all such payments should be made by check signed by the judge of the court and the two custodians.

The case of Aetna Insurance Co. v. O'Malley et al., 342 Mo. 800, 118 S. W. (2d) 3, involved the question of fees allowed Cook and Lauf as custodians and commissioners. We held that the court had authority only to appoint referees whose fees would be litigation costs taxed against the losing party, but that the court was without jurisdiction to distribute the insurance fund of the policyholders because Section 5874, Revised Statutes 1929, lodged that duty in the Superintendent.

Thereafter, the Central Missouri Trust Company filed a motion in the circuit court stating that that court had caused to be deposited with the movant "from time to time from December 29, 1934, to the 21st day of August, 1936, sums ranging in amount from 30 cents to $265,985.59 and aggregating the sum of $2,751,256.32;" that various sums were paid therefrom on checks drawn in accordance with the orders of that court; and that there was then a balance in the account so deposited of $2,360,488.23. It asked that the court make an order directing it to pay said sum of $2,360,488.23 to the Superintendent.

Thereafter, the Superintendent as relator filed his application

for this writ of prohibition to restrain the respondent from proceeding to hear and determine said motion of the Central Missouri Trust Company or to make any orders in regard to said deposit. Respondent's return to our preliminary rule stated that if not prohibited by this court, he intended to make an order to the effect that since he received the mandate in the Cook-Lauf fee case he was without jurisdiction to administer this fund, but that it was his duty to deliver this fund to the Superintendent of Insurance and he would make an order directing that said sum of $2,360,488.23, now on deposit in the Trust Company, be paid to the relator, without determining or adjudging any other issue raised by said motion. Relator then filed a motion for a judgment on the pleadings.

During the oral argument of this cause, both relator and respondent admitted that there is pending in the circuit court an action wherein the relator is plaintiff and the Central Missouri Trust Company is the defendant, to determine the liability of the Trust Company for sums paid out of the fund on orders of respondent which we held to be illegal in the Cook-Lauf fee case.

Both relator and respondent admit that the balance of $2,360,488.23 is in *custodia legis* in the registry of the circuit court, even though the respondent judge has caused the money to be deposited in the Central Missouri Trust Company, subject to his check. Relator in his brief says that "Respondent has jurisdiction to order all the money paid into its registry by the insurance companies in case of Aetna Ins. Co. v. O'Malley, but that does not mean jurisdiction to pay a less amount than was paid into its registry." Ignoring for the present the question of whether the respondent had jurisdiction to pay over to the relator a less sum than was paid into the court's registry, we are of the opinion that the respondent had the power to enter an order on the records of his court to pay over to relator this fund, irrespective of any motion filed by the Central Missouri Trust Company, and should have done so after receiving the mandate of this court in the Cook-Lauf fee case. A court can speak only through its records, Davison v. Hough, 165 Mo. 561, 65 S. W. 731, and it was compulsory for the respondent to have made an order to comply with our mandate.

The question now arises: Did the respondent have jurisdiction to make an order turning over a less sum than it received from the insurance companies? In other words, the respondent received from the insurance companies an aggregate of $2,751,265.32, and paid out of this fund $390,768.09 (fees to Cook, Lauf and Gilbert Lamb, their attorney, office expenses, and excess premium returns to policyholders), leaving in the registry of the court the sum of $2,360,488.23. Has it now jurisdiction to make an order to pay over this latter sum to the relator? The relator contends that it does not have jurisdiction to do so, even if the order is made without prejudice as to the lia-

bility of the Central Missouri Trust Company for sums paid out of the deposit by illegal orders made by the respondent.

To sustain his contention, relator relies upon the case of State ex rel. Minnesota Mut. Life Ins. Co. v. Denton, 229 Mo. 187, 129 S. W. 709. In that case, the plaintiff held three policies of Insurance written on the assessment plan by relator which afterward ceased to write such policies and began to write old line policies. The plaintiff sued relator in that case in the Circuit Court of Henry County, Missouri, for an accounting and the appointment of a receiver. In a prohibition proceedings, we held the circuit court did not have jurisdiction in the case pending before it because the relator was a foreign corporation domiciled in the State of Minnesota, and the ascertainment of the amount due the plaintiff could not be determined without a complete accounting which could not be had without "a complete visitation of the corporation, a thorough inquiring into all of its affairs and an ascertainment not only of the condition of the account of the corporation with this plaintiff, but of the accounts of all its members who now have, or have ever had policies," in every state in which they are located and therefore such an accounting is beyond the jurisdiction of a court of equity of this State that has only a limited jurisdiction over a foreign corporation. "It is within the scope of equity jurisdiction to cause an accounting to be made under some circumstances and to render judgment for the balance ascertained. But the money judgment is to follow the accounting, and if the conditions surrounding the case are such as to put the accounting beyond the reach of the court it has no jurisdiction to render a money judgment." We do not think that case is in point with the question at bar.

In speaking of this fund in the Cook-Lauf fee case, Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S. W. (2d) 3, l. c. 9, we said: "When the companies failed to perform their statutory duty, the circuit court had jurisdiction to compel them to do so by adjudging that *they pay the excess premiums still in their possession to the Superintendent of Insurance, or into court for him,* but it did not have authority to seize the fund and attempt to administer it through custodians of its own choosing in violation of the statute which provides, in plain terms, that the Superntendent of Insurance shall administer it." So we see that in the restitution proceedings that the circuit court had the power to cause the insurance companies to pay the excess premiums collected by them directly over to the Superintendent of Insurance. It also had the power to cause these funds to be paid into court for him as a representative of the policyholders. The excess premiums were paid into court by order of the circuit court, and they were paid into court, not in one lump sum but in various amounts at various times by each insurance company, as the records in this court will show. [Aetna Ins. Co. v. O'Malley, supra.] The circuit court could

have made numerous orders requiring that the various sums as received by the custodians be paid over to the relator, or it could have made an order that the insurance companies pay the various sums as they were ascertained directly to the Superintendent of Insurance, leaving open the question of the exact amount finally due until it was determined and refunded by them, after which the insurance companies would be discharged in the restitution proceedings. On analogy, the court would have jurisdiction to turn over to the relator the funds now held in the registry of the court, leaving yet to be determined if the Central Missouri Trust Company or anyone else is liable for the money paid out on illegal orders of the relator. If we understand the relator's position correctly, he contends that the respondent could not make an order except for the full amount he received in the registry of his court, even if a large amount of the money paid out went to the policyholders who were entitled to it.

There is no doubt that the only power the respondent has in reference to these funds is to make an order turning them over to relator. Respondent is without jurisdiction in any way to administer these funds. He is also without jurisdiction to determine the liability of the Central Missouri Trust Company or anyone else in the motion pending before him. But from what we have said, respondent does have jurisdiction to make an order turning over the funds in his hands to the relator, without in any way attempting to decide the liability of the Trust Company or anyone else for the various amounts paid out on his illegal orders or any interest that may be due on account of these illegal orders. The liability of the Central Missouri Trust Company can be determined in the case brought by the relator now pending in the circuit court. If relator is successful in that case, the amount determined to be due can be paid to the relator for the benefit of the policyholders.

There is another and very important reason why our writ should not be made absolute to the extent of preventing the respondent from making an order for the amount he now has on hands to be paid to relator and that is that a writ of prohibition is a discretionary writ. It should not be granted until it appears, first, that the law sanctions it, and, second, that a sound judicial discretion commends it. [Davison v. Hough, supra; State ex rel. Larew v. Sale, 188 Mo. 493, 87 S. W. 967.] ''Nor are we concluded or controlled at this stage of the proceeding by the fact that our preliminary rule has already been issued, for a sound application of the law and the exercise of a sound discretion are just as essential and efficacious on a final consideration of the whole matter.'' [State ex rel. Hettrick Mfg. Co. v. Lyon, 321 Mo. 825, 12 S. W. (2d) 447, 1. c. 449.]

We think, on principle, that the facts of the case at bar and the facts in the case of State ex rel. Burton v. Montgomery, 316 Mo. 658, 291 S. W. 472, are similar. That case was an original proceed-

ings in prohibition in which the relator sought to prohibit the respondent from hearing an assault with intent to kill charge filed in the Chariton County Circuit Court. Relator's contention was that the alleged offense happened in Saline County. There was litigation then pending in regard to the title to the land where the alleged offense occurred. In other words, title to this land depended on whether the land was in Chariton County or Saline County. In denying the writ on discretionary grounds, we. said (316 Mo. l. c. 664, 291 S. W. l. c. 474):

"It thus appears on the face of the record that, as between relator and respondents, as far as this prosecution is concerned, it stands admitted that the trial court is without jurisdiction to hear and determine the case. But it also appears from intervener's return and relator's reply, as well as their agreed statements of facts, that these parties have sought to frame issues that would require us to make some adjudication affecting or defining the territorial boundaries of Chariton and Saline Counties, and affecting muniments of title issuing from said counties, although neither Saline County nor the landowners that would be affected are parties to this suit. Issues thus designed to affect such public and private interests should certainly not be disposed of on a mere technical rule of pleading. Relator has an adequate remedy at law, in that he can challenge the jurisdiction of the circuit court by plea in abatement. Our careful considertion of the entire record forces us to conclude that a proper exercise of our discretion calls for a denial of the writ.''

■ There is now pending in the circuit court an action between the relator and the Central Missouri Trust Company to determine the liability of the Trust Company for various sums paid out on illegal orders of respondent which would determine if the Trust Company is liable for interest on the deposit, also, if it can get credit for the excess premiums returned by Cook and Lauf to the policy-holders. In this proceedings we should not undertake to pass on any of these questions because the Central Missouri Trust Company is not and cannot be made a party to this prohibition action, although it is interested in the result. [State ex rel. Conran v. Duncan, 333 Mo. 673, 63 S. W. (2d) 135.] In this we are supported by an opinion by GANTT, J., adopted less than a month ago in the case of State of Missouri at the Relation of School District No. 24 of St. Louis County, Missouri, Known as Lake School District et al., v. Martin L. Neaf, as County Assessor of St. Louis County, State of Missouri, 344 Mo. 905, 130 S. W. (2d) 509, where we held that a writ of mandamus should be denied on discretionary grounds. In ruling the case, the opinion said: "If relator, the Lake School District, is directly interested in the taxation of said property as a part of the real estate of the company, by the same token the many municipalities and school districts in St. Louis County are directly interested in the taxation of

said property where located. In other words, the issuance of a peremptory writ would affect others not parties to this action, and for that reason deliberate consideration should be given to the issues.''

Moreover, this litigation, in one phase or another, has been pending for seventeen years. The policyholders have been deprived of their money during this time. Certainly, litigation must end some time, and in this instance nothing should now be done to hinder the policyholders from having their money returned to them during their lifetime. It has been stated during the arguments of some of the various phases of the Aetna case that only a very small percentage of the policyholders who have not been paid can be found. If payment to the remaining policyholders be delayed any longer, of course fewer of them will be able to be found. From these statements we gather that the policyholders who can be found can be paid in full, leaving many thousands of dollars in the hands of the relator. A careful consideration of the entire record forces us to conclude that a proper exercise of our discretion calls for a denial of our writ to the extent that the respondent not be prohibited from returning the funds now in the registry of his court to the relator for distribution to the policyholders, leaving open the questions in regard to money paid out by his illegal orders, and interest, if any, due on these deposits. The respondent does not have jurisdiction to make any other orders affecting the money now in the registry of his court. (Relator admits in his brief that this sum is in the registry of respondent's court.) To make any other ruling would be a modification of the principal opinion in the case of Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S. W. (2d) 3. This we decline to do.

From what we have said, it follows that this preliminary rule heretofore issued should be discharged to the extent that the respondent be permitted to make an order paying to the relator the money now in the registry of his court, but in all other respects our writ should be made absolute. It is so ordered. *Clark, Ellison* and *Leedy, JJ.,* concur; *Hays, Douglas* and *Gantt, JJ.,* dissent.